**E-Filed 3/28/2011**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELISSA SERRANO,<br><br>           Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>           Defendant. | Case Number 5:09-CV-04528 JF<br><br>**ORDER[1] DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Docket Nos. 18, 20 |

Plaintiff Felissa Serrano appeals the denial of disability insurance benefits and Supplemental Security Income by Defendant Michael J. Astrue, the Commissioner of Social Security.[2] The parties have filed cross-motions for summary judgment. For the reasons set forth below, Serrano's motion will be denied, and Defendant's motion will be granted.

---

[1] This disposition is not designated for publication in the official reports.

[2] This decision was rendered by Administrative Law Judge Brenton L. Rogozen on June 18, 2009. AR 6. It became final on August 13, 2009, when the Appeals Council of the Social Security Administration denied Serrano's request for administrative review. AR 1.

Case No. 5:09-CV-04528 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFEX1)

# I. BACKGROUND

**A.    Personal and Medical History**

Serrano was born in Mexico on July 6, 1953, where she attended school through the eleventh grade. AR 175, 55. She immigrated to the United States in 1982 and became a U.S. citizen. AR 175. Although Serrano understands some English, she has never studied English formally and prefers to communicate in Spanish. AR 54. Serrano worked as an electronics tester for nineteen years before being laid off in 2004. AR 56. She collected unemployment benefits for a few months before finding work as a housekeeper in a convalescent hospital, where she worked until she was hospitalized on August 11, 2005. AR 205-212, 217, 289. Serrano was diagnosed by Dr. Gubbala as having suffered an "acute cerebrovascular accident," which is commonly known as a stroke, although the results of several subsequent medical tests were within normal limits. AR 289-311. Dr. Gubbala also diagnosed Serrano with diabetes. AR 289. Serrano has not had a job since she was hospitalized in August 2005. AR 13.

Serrano claims that she has suffered ongoing pain and weakness on the right side of her body since her stroke. She was evaluated by Dr. James Laster, a neurology specialist, in November 2005. AR 312-314. Dr. Laster noted that Serrano's upper arm muscles felt strong and that her symptoms seemed to be "somewhat embellished." AR 313. Serrano was evaluated again in June 2006 by Dr. Carmen Lopez, who found "inconsistencies in her alleged weakness" and signs of malingering and poor cooperation. AR 347. Dr. Laster evaluated Serrano a second time in May 2007 and again noticed "some embellishment of her symptoms." AR 352. Serrano was hospitalized in June 2007 for anxiety and extreme pain on her right side. After performing several tests, including a CT scan and an MRI, Dr. Guisado determined that there was no evidence of "any old or new strokes" and that Serrano's symptoms were "psychogenic." AR 385. Serrano was involuntarily hospitalized on July 22, 2008, because she expressed an intention to commit suicide. AR 525-548.

**B.    Standard for Awarding Disability Benefits**

> To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The ALJ first considers whether the claimant is engaged in substantial gainful activity; if not, the ALJ asks in the second step

2

whether the claimant has a severe impairment (i.e., one that significantly affects his or her ability to function); if so, the ALJ asks in the third step whether the claimant's condition meets or equals one of those outlined in the Listing of Impairments in Appendix 1 of the Regulations; if not, then in the fourth step the ALJ asks whether the claimant can perform his or her past relevant work; if not, finally, the ALJ in the fifth step asks whether the claimant can perform other jobs that exist in substantial numbers in the national economy.

*Lewis v. Apfel*, 236 F.3d 503, 508 (9th Cir. 2001).

**C.     Procedural History**

Serrano received State Disability Insurance ("SDI") benefits for approximately nine months after her hospitalization in August 2005. AR 197-200. She applied for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits in November 2005, but her application was denied initially and on reconsideration. AR 175-181, 114. She was granted a hearing before Administrative Law Judge Brenton L. Rogozen ("the ALJ") on August 28, 2007, during which she asserted that she could not walk without assistance, could not use her right hand, had chronic pain on her right side, and was depressed. AR 114. The ALJ ruled against Serrano on December 5, 2007, finding that her statements regarding her symptoms were "not entirely credible." AR 118. Serrano appealed, and the Appeals Council remanded to the ALJ with specific instructions. AR 120. The Council found that the ALJ improperly disregarded the opinions of certain medical experts and that the record was unclear with respect to Serrano's mental impairments; accordingly, it ordered the ALJ to obtain further evidence of Serrano's physical and mental impairments and to consult with a vocational expert to determine the effects of such impairments on Serrano's ability to work. AR 123.

On July 9, 2008, following remand, Dr. Paula Chaffee conducted a psychological evaluation of Serrano. She diagnosed Serrano with conversion disorder, which means that her symptoms are "often based on external cues" but are not malingered. AR 471. She also diagnosed Serrano with hypochondriasis, major depressive disorder, generalized anxiety disorder, and panic disorder. AR 471. Dr. Chaffee further determined that Serrano's I.Q. was consistent with mild mental retardation. AR 471. Dr. Robert Bilbrey, a licensed psychologist, administered various intelligence, memory, and malingering tests on August 7, 2008, and Serrano performed poorly on all of them. AR 455-58. Dr. Bilbrey believed that Serrano likely had been

malingering because she could carry on conversations in two languages and could drive a car, which are abnormal abilities for individuals who perform poorly on intelligence and memory tests. AR 457-58. Serrano also was evaluated by Dr. Lin, a neurologist, who concluded that Serrano was unable to use the right side of her body and that she was not malingering. AR 477-483.

The ALJ conducted a second hearing on May 6, 2009. AR 84. The ALJ issued a partially favorable decision on June 18, 2009, ruling that Serrano became disabled in July 2008 but not before that date.[3] AR 13. The ALJ found that Serrano's depression was sufficiently severe to satisfy the requirements of step two of the five-step benefits inquiry, but that her other alleged impairments were not. AR 13. The ALJ determined that Serrano's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms were "not credible before July 22, 2008," as Serrano had been suspected of "embellishing and malingering" by several doctors prior to July 2008. AR 18, 14. Accordingly, the ALJ granted Serrano's request for benefits commencing in July 2008, but he denied her request for benefits for the period of August 2005 to July 2008. AR 13. Serrano appealed the denial of benefits for this period, but the Appeals Council denied review, thus making the ALJ's decision the final decision of the Commissioner.

## II. STANDARD OF REVIEW

The Court may review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is supported by substantial evidence and applies the correct legal standards. *Lewis*, 236 F.3d at 509. "Substantial evidence is relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Id.* (citations omitted). "Where evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld." *Moncada v. Chater*, 60 F.3d 521, 533 (9th Cir. 1995). However, if the Court finds "that the ALJ's findings are based on legal

---

[3] The Social Security Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

error or are not supported by substantial evidence in the record," it may set aside the Commissioner's denial of benefits. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1995).

### III. DISCUSSION

**A.     Dr. Chaffee's Opinion**

The ALJ dismissed Dr. Chaffee's opinion as "speculative," opining that Dr. Chaffee was being paid by Serrano's counsel and therefore was biased. AR 18. Serrano argues that the ALJ's finding of bias is unsupported by the record, which shows that Serrano was referred to Dr. Chaffee by the Department of Social Services and that Serrano's counsel never hired or paid Dr. Chaffee to assess Serrano. AR 465. Serrano points to a letter written by Dr. Chaffee to the Appeals Counsel after the ALJ issued his final ruling, in which she stated:

> I would like to clarify that I have no professional relationship with Ms. Valle [Serrano's counsel]. She has never hired me to assess a client, and I have never been compensated by Ms. Valle or her office . . . my referrals come from social workers at GA, and I am compensated only by the County [of Santa Clara].

AR 607.

It appears from the record that Serrano was referred to Dr. Chaffee by the Department of Social Services and that she never was paid by counsel for her services. AR 465. However, almost all of the physicians who evaluated or treated Serrano following her first hospitalization in August 2005 suspected her of malingering. *See* AR 113 (Dr. Laster noted that Serrano's symptoms were embellished"); AR 347 (Dr. Lopez found inconsistencies and signs of poor cooperation and malingering); AR 385 (Dr. Guisado determined that her symptoms were "psychogenic" after conducting various medical tests); AR 455-58 (Dr. Bilbrey administered a malingering test to Serrano and she performed poorly on it). Accordingly, the record supports the ALJ's decision to give little weight to Dr. Chaffee's diagnosis of conversion disorder. *See* 20 C.F.R. 404.1527(d)(3) (weight afforded medical opinion depends on how well it is supported by and consistent with the other evidence of record).

Moreover, Dr. Chaffee's finding of mild mental retardation is uncorroborated. Although mild retardation may explain Serrano's poor performance on the intelligence test administered by Dr. Bilbrey, Dr. Bilbrey questioned the reliability of this test result in light of Serrano's poor performance on a malingering test that he administered on the same day. AR 457-58. Dr.

Bilbrey also noted that individuals who score poorly on intelligence tests typically cannot carry on conversations in two languages or drive a car, as Serrano can. AR 457-58. Accordingly, the ALJ's decision to give "very little weight" to Dr. Chaffee's diagnoses is supported adequately by the record.

### B.   Serrano's Credibility

Serrano also asserts that the ALJ improperly found that her testimony was unreliable. After a claimant produces objective medical evidence showing that her alleged impairments reasonably could be expected to produce some degree of the alleged symptoms, the ALJ may reject the claimant's testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton v. Barnhart*, 331 F.3d 1030, 1040-41 (9th Cir. 2003). Here, there is substantial evidence in the record to support the ALJ's finding that Serrano was not credible, as several doctors suspected Serrano of malingering and characterized her as uncooperative during medical examinations. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding ALJ's determination that the claimant lacked credibility because the record showed that she failed to give maximum effort during medical examinations). Under these circumstances, the ALJ did not commit legal error in rejecting Serrano's testimony.

### C.   Dr. Rack's Testimony

Serrano contends that the ALJ mischaracterized the testimony of Dr. William Rack, a neurologist who testified at her hearing on May 6, 2009, by disingenuously suggesting that Dr. Rack had stated that Serrano could perform at least light work. The record does not support this contention. During the hearing, Dr. Rack stated that "there was no evidence of a stroke having been present" and agreed with the ALJ's statement that "there doesn't seem to be any objective evidence to show that there is anything wrong with her arm." AR 103. Accordingly, Dr. Rack's testimony regarding Serrano's physical condition is consistent with the ALJ's finding that Serrano was able to perform at least light work during the period at issue.

//

//

6

**ORDER**

Good cause therefor appearing, IT IS HEREBY ORDERED that Serrano's motion for summary judgment is DENIED and that Defendant's cross-motion for summary judgment is GRANTED.

DATED: March 28, 2011

_____
JEREMY FOGEL
United States District Judge

Case No. 5:09-CV-04528 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFEX1)